Nott, Ch. J.,
delivered the opinion of the court:
This case is remarkable in being the only one of the thousands in the files of the court, so far as is known to counsel or to the court, in which a French prize court in the West Indies granted the equitable privilege of proving a material fact which a vessel’s papers failed to show. That is to say, it appears by the preliminary decree, set forth in the findings of fact, that the tribunal of commerce sitting at Basse Terre, in the island of Guadaloupe, finding that the vessel carried no proof that the cargo belonged to citizens of the United States, allowed the master of the vessel four months in which to return to Massachusetts and procure the requisite proofs.
When the case again came to a hearing, the final decree recites, the French consul in Massachusetts had reported “that there were presented to him books informal and insufficient for the purpose of establishing judgment.” The decree also declares “that the master has not sufficiently proved by the statement he has made of the official report from the French consul” and “by the documents thereto annexed, the whole produced on trial, of the American ownership of the cargo.” The decree therefore declared the Dolphin and cargo and the proceeds thereof be good prize and paid to the captors.
At the time when the vessel was seized, 15th August, 1797, the treaty with France of 1778 was still in force. That treaty prescribed the evidence of nationality which American and French vessels should carry, and there is nothing in the case which shows that the Dolphin complied with the treaty in any one particular. She was sailing, in time of war, in the neigh *254 borhood of belligerent ports, and in the absence of such papers her voyage was suspicious and she was liable to seizure and investigation. The master, in his protest, says that .his papers were taken from him, but neither his protest nor the decree of the court show that the vessel carried a passport or .any designated paper. The decree in the case went a little further in designating certain papers, which she did not cany, which would have shown the ownership and consequent neutrality of the cargo. Guilty of such irregularities in time of war, all that the master was entitled to the French court granted — ample time to proceed to his home port and procure evidence of ownership and neutrality.
If better evidence of the ownership of the cargo could not be produced before the French consul, it was the owners’ misfortune. If better was produced than is recited in the decree, which can not now be shown to this court, it is the claimants’ misfortune. The primary cause of seizure was the fault of the vessel in not carrying the prescribed evidences of nationality and neutrality. All that the French court could be reasonably asked to grant was granted, and on the record as it stands this court can not say that the French court reached a a wrong conclusion, much less that it acted in an illegal, unreasonable, or unjust manner.
Concerning the vessel the case is not so clear. As before said, it does not appear that she carried a passport; but it does appear that her nationality was shown to the piize court by her register. There are also some facts appearing on the record which lead to the conclusion that the French court recognized her nationality.
In the first place, it appears by the protest that the vessel’s papers, whatever they were, passed into the possession of the ■captors and of the prize court. In the second place, the preliminary decree is directed solely against the cargo, the absent papers which it recites not being papers which affected the vessel. And the leave given to the master to return to Massachusetts and procure evidence is in terms applicable only to the cargo. No question whatever is raised in the preliminary decree as to the nationality of the vessel. It is a case where exbeptio probat regulam. If the court was not then ■satisfied as to the nationality of the vessel, leave should have *255 been and, we may say, would have been granted to enable the master to likewise procure the necessary and formal proof. In the third place, the preliminary decree does not direct the condemnation or sale of the vessel, but, on the contrary, provides that in order to preserve said brig “it is ordered that she be taken to Lancala Barque under such care as accepted by the parties,” which shows that there was no determination to condemn then. In the fourth place, the condemnation and final decree is not upon the ground that the nationality of the vessel has not been shown, but upon the ground that by French law, the ordinance of 1682, “vessels with their cargoes shall be good prize upon which there shall not be found charter party, bill of lading, or invoices.” Condemnation for that cause — that is to say, because a French statute so provided — was illegal. Neither the treaty of 17-78 nor the international law of the time would then justify the condemnation of a vessel because of belligerent ownership of her cargo or a portion of her cargo.
For these reasons it must be held that the claimants are legally entitled to indemnity for the seizure and condemnation of their vessel, but that thejr are not entitled to indemnity for loss of their cargo.
As this vessel was carrying a cargo all of which, so far as appears, was liable to legal condemnation, and as the fault was the vessel’s, no freight earnings should be recovered.
The only insurance effected was $500, in favor of one of the owners, upon “vessel and cargo.” For-the insurance upon the cargo the defendants are not liable. The policy value of this owner’s interest in the. vessel was $2,000, about four-sevenths of the valuation of the vessel and of the cargo. The underwriter, therefore, should recover only four-sevenths of the insurance he paid, to wit, $286; and the assured owner should recover only four-sevenths of the premium which he paid, to wit, $71.
The cases will be so reported to Congress, together with a copy of this opinion.